IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, :

    Plaintiff,

v. : Case No. 3:15-cr-82

WILLIAM E. McDONALD, : JUDGE WALTER H. RICE

    Defendant. :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE AND STATEMENTS (DOC. #36)

---

Defendant William E. McDonald was indicted on charges of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. #31. This matter is currently before the Court on Defendant's Motion to Suppress certain evidence and statements, Doc. #36. An evidentiary hearing was held on February 22, 2016, and the transcript of that hearing appears on the docket as Doc. #44. Post-hearing briefs have also been filed. Docs. ##45, 46.[1] For the reasons set forth below, the Court overrules Defendant's motion.

---

[1] On June 7, 2016, Defendant filed a *pro se* memorandum in support of the Motion to Suppress. Doc. #47. Typically, courts do not allow hybrid representation. Where, as here, a defendant is represented by counsel, courts will not consider *pro se* filings. *United States v. Montgomery*, 592 F. App'x 411, 415 (6th Cir. 2014). Moreover, Defendant's *pro se* memorandum was untimely filed. Nevertheless, the Court has read the memorandum, and finds nothing in it that changes the outcome in this particular case.

I.   **Search Warrant**

On December 4, 2014, Federal Bureau of Investigation ("FBI") Special Agent Robert Buzzard applied for a search warrant for 35 Lorenz Avenue in Dayton, Ohio. According to Buzzard's affidavit, submitted in support of the warrant request, probable cause existed to believe that evidence related to a drug trafficking conspiracy would be found there. Buzzard's affidavit sets forth the following details about the investigation that prompted the search warrant application:

> 5.   Beginning in September 2013 and continuing thereafter, the Dayton Police Department began receiving information concerning an individual indentified [sic] as Kevin Hunter storing and selling heroin inside a residence at 35 Lorenz Avenue, Dayton, Ohio.
>
> 6.   Your Affiant conducted a property search of the public records maintained by the Montgomery County Ohio Auditor and learned the registered owner of 35 Lorenz Avenue is Yvette Smith. A search of Dayton Police Department records documented an Aggravated Burglary complaint in July of 2009 at 35 Lorenz Avenue, Dayton, Ohio. The report documented Kevin Hunter, Yvette Smith, and others being inside the residence during the reported aggravated burglary.
>
> 7.   On February 18, 2014, FBI Task Force Officers conducted a trash pull (discarded trash placed at the street curb, alleyway, or public sidewalk ready for removal by the waste collection company) at 35 Lorenz Avenue, Dayton, Ohio. Task Force Officers located discarded mail included in the trash addressed to 35 Lorenz Avenue, Dayton, Ohio and mail addressed to Hunter's mother, Tuesday Etchison of 621 Gramont Avenue, Dayton, Ohio located inside the trash receptacle. Task Force Officers also located approximately four plastic sandwich-style bags containing residue which field tested positive for the presence of cocaine inside the trash receptacle.
>
> 8.   On February 25, 2014, FBI Task Force Officers conducted a second trash pull at 35 Lorenz Avenue, Dayton, Ohio. Inside the trash receptacle, Task Force Officers located discarded mail

addressed to 35 Lorenz Avenue, Dayton, Ohio. Additionally, Task Force Officers located approximately two plastic sandwich-style bags containing residue which one field tested positive for the presence of cocaine. Task Force Officers submitted the baggies containing residue to the Montgomery County Regional Crime Laboratory for analysis. Laboratory results indicate one of the baggies tested positive for heroin, a Schedule I controlled substance.

9. On March 4, 2014, FBI Task Force Officers conducted a third trash pull at 35 Lorenz Avenue, Dayton, Ohio. Discarded mail addressed to 35 Lorenz Avenue, Dayton, Ohio was found in the trash receptacle along with one plastic baggie containing residue which field tested positive for the presence of heroin. Task Force Officers submitted the baggie containing residue to the Montgomery County Regional Crime Laboratory for analysis. Laboratory results indicate the baggie tested positive for heroin.

10. On March 4, 2014, FBI Task Force members conducted surveillance at 35 Lorenz Avenue, Dayton, Ohio. During the surveillance, Kevin Hunter, William Eugene McDonald, and Brandon Mattison were observed entering and departing from the residence.

11. On March 5, 2014, your Affiant interviewed an individual, hereinafter referred to as Confidential Source One (CS1). CS1 has provided prior information to law enforcement officials, which has been corroborated as trustworthy, accurate and reliable by independent investigations. CS1 identified 35 Lorenz Avenue as a residence used to process, store, and sell heroin. During a four month period in 2012 and 2013, CS1 personally picked up re-sale amounts of heroin from 35 Lorenz Avenue. CS1 identified Emmett Folley Jr. as the individual CS1 obtained the heroin from at 35 Lorenz Avenue. CS1 also identified Brandon Mattison as an individual who delivered heroin to CS1 on behalf of Emmett Folley Jr.

12. A search of Montgomery County, Ohio Jail records indicated Emmett Folley Jr. provided 35 Lorenz Avenue, Dayton, Ohio as his home address when booked into the Montgomery County Jail on September 10, 2013.

13. On March 7, 2014, FBI Task Force members conducted a physical surveillance at 35 Lorenz Avenue, Dayton, Ohio. During the surveillance, Kevin Hunter, Brandon Mattison, and William Eugene McDonald were observed entering and departing from the residence.

14. On March 14, 2014, your Affiant interviewed a second individual, hereinafter referred to as Confidential Source Two (CS2). CS2 has provided prior information to law enforcement officials, which has been corroborated to be trustworthy, accurate and reliable by independent investigations. CS2 identified 35 Lorenz Avenue, Dayton, Ohio as a residence used by Emmett Folley Jr. and Kevin Hunter to store, process, and sell heroin and cocaine. CS2 advised Folley Jr. and Hunter have been partners in the drug business for at least the past three years. In the summer of 2013, and continuing thereafter, CS2 observed Hunter and Folley Jr. in possession of heroin and cocaine inside said residence.

15. On March 18, 2014, FBI Task Force Officers conducted a fourth trash pull at 35 Lorenz Avenue, Dayton, Ohio. Three plastic baggies containing residue were found discarded in the trash receptacle. Task Force Officers submitted the baggies containing residue to the Montgomery County Regional Crime Laboratory for analysis. One of the baggies containing residue tested positive for Fentanyl, a Schedule II controlled substance. Your Affiant knows through training and experience that Fentanyl is commonly mixed with heroin for re-sale.

16. On March 18, 2014, your Affiant obtained a federal search warrant for 35 Lorenz Avenue, authorized by U.S. Magistrate Judge Michael Newman. The following morning, task force members established pre-search warrant surveillance at 35 Lorenz Avenue. Shortly afterward, William Eugene McDonald exited 35 Lorenz Avenue and noticed surveillance units. Thereafter, individuals began leaving the residence indicating the operation was compromised. Your Affiant subsequently returned the search warrant unserved.

17. On November 7, 2014, your Affiant, ATF Special Agent Dave McMullen, and DEA Special Agent Matt Allen participated in an interview with a Cooperating Defendant, hereinafter referred to as CD1. CD1 has provided prior information to law enforcement officials, which has been corroborated to be trustworthy, accurate and reliable by independent investigations. CD1 reported being part of a large-scale heroin trafficking organization operating in the Dayton, Ohio area. CD1 advised members of the organization sold Fentanyl mixed heroin which is responsible for multiple overdoses in the Dayton, Ohio region. CD1 identified Kevin Hunter as a member of the same heroin trafficking organization selling kilogram quantities in the Dayton area. Specifically, CD1 identified 35 Lorenz Avenue as the residence Hunter uses to store, process, and sell heroin.

18. On November 18, 2014, FBI Task Force Officers conducted a fifth trash pull at 35 Lorenz Avenue, Dayton, Ohio. Two plastic baggies containing residue were found discarded in the trash receptacle along with mail addressed to 35 Lorenz Avenue. Task Force Officers submitted the baggies containing residue to the Montgomery County Regional Crime Laboratory for analysis. One of the baggies containing residue tested positive for Tetrahydrocannabinol (THC).

19. On November 25, 2014, FBI Task Force Officers conducted a sixth trash pull at 35 Lorenz Avenue, Dayton, Ohio. Two plastic baggies containing residue were found discarded in the trash receptacle. Task Force Officers submitted the baggies containing residue to the Montgomery County Regional Crime Laboratory for analysis. One of the baggies containing residue tested positive for Tetrahydrocannabinol (THC).

20. On December 2, 2014, FBI Task Force Officers conducted a seventh trash pull at 35 Lorenz Avenue, Dayton, Ohio. Two plastic baggies containing residue were found discarded in the trash receptacle. Task Force Officer Rick Bergman conducted a field test on one of the plastic baggies and received a positive test for the presence of narcotics.

21. Based on the facts set forth in the Affidavit, your Affiant believes there is probable cause to believe that evidence associated with the above listed drug trafficking offenses is located at 35 Lorenz Avenue, Dayton, Ohio.

Govt. Ex. 1 (Doc. #1, PageID##6-9, in Case No. 3:14-mj-517).

Based on Buzzard's affidavit, Magistrate Judge Newman issued a second search warrant on December 4, 2014. That warrant was executed at approximately 10:00 a.m. on December 9, 2014. At the February 22, 2016, evidentiary hearing, two agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that when they executed the warrant, Defendant McDonald was found in the basement of the house. Doc. #44, PageID##135,

5

157. Two firearms were also found in the basement. Elsewhere in the house, officers found a digital scale and some Fentanyl residue. *Id.* at PageID##175.

Agent Frank Occhipinti testified that he read Defendant his Miranda rights, and that Defendant agreed to waive those rights. *Id.* at PageID#139-40. Agents David McMullen and Chris Reed interviewed Defendant at the house shortly thereafter. *Id.* at PageID##144, 163. During that interview, although Defendant initially denied knowing that there were weapons in the basement, he later admitted that he knew they were there and had moved the pistol closer to his office desk area for protection. *Id.* at PageID##172-73, 181-83.

## II. Motion to Suppress Evidence and Statements (Doc. #36)

Defendant has moved to suppress: (1) all evidence seized from 35 Lorenz Avenue, on the grounds that Buzzard's affidavit did not establish the existence of probable cause; and (2) all incriminating statements Defendant made prior to being given any *Miranda* warnings. Doc. #36.

As the Government noted in its Opposition to Defendant's Motion to Suppress, Doc. #46, it appears that Defendant has abandoned the second branch of his motion. His post-hearing brief, Doc. #45, is limited solely to the question of whether the search warrant was constitutional and whether the good faith exception applies. Accordingly, the Court overrules as moot Defendant's request to suppress his incriminating statements, and addresses only the question of whether evidence seized during the search must be suppressed.

6

The Government maintains that Agent Buzzard's affidavit was sufficient to establish probable cause for the issuance of the search warrant. In the alternative, the Government argues that the "good faith" exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897 (1984). The Court agrees on both accounts.

### A. Sufficiency of Search Warrant Affidavit

The Fourth Amendment to the United States Constitution establishes the right to be free from unreasonable searches and seizures. It provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

In order to safeguard these rights, the judicially-created exclusionary rule "forbids the use of improperly obtained evidence at trial," *Herring v. United States*, 555 U.S. 135, 139 (2009). One notable exception exists. If officers seized the evidence "in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective," then exclusion of the evidence is not required, because it would not serve to deter future unconstitutional conduct. *Leon*, 468 U.S. at 905, 922.

In determining whether probable cause exists to issue a search warrant, the relevant inquiry is whether, given the totality of circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The

search warrant affidavit must establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). In addition, "[b]ecause probable cause has a durational aspect, at least some temporal reference point is necessary to ascertain its existence." *United States v. Hython*, 443 F.3d 480, 486 (6th Cir. 2006). If the information contained in the warrant affidavit is stale, or outdated, this decreases the likelihood that the requisite nexus exists. *Id.*

Defendant interprets the warrant request to be specifically directed at heroin that was allegedly being stored and sold by Kevin Hunter at 35 Lorenz Avenue. Defendant argues that, because the only information in Buzzard's affidavit specifically linking Hunter's heroin trafficking activity to that address was over eight months old, it was stale. According to Defendant, there was no probable cause to believe that evidence of heroin trafficking would still be found at that location on December 4, 2014, when the second search warrant application was made.

Trash pulls, surveillance, and statements made by confidential informants support a finding that Hunter stored and sold heroin at 35 Lorenz Avenue from 2012 through March 18, 2014, the date on which the first search was compromised and the warrant unexecuted. Defendant speculates that Hunter

8

moved his drug trafficking operations elsewhere after learning of the surveillance.[2] There is no indication in Buzzard's affidavit that Hunter was seen at 35 Lorenz Avenue after March 18, 2014. This, however, does not necessarily render the affidavit defective. As the Sixth Circuit recently pointed out, "[s]earch warrants target places, not people." *United States v. Church*, --F.3d--, 2016 WL 2865736, at *1 (6th Cir. May 17, 2016).

The relevant question is whether there was probable cause to believe that, as of December 4, 2014, evidence of drug trafficking would still be found at 35 Lorenz Avenue. Staleness of information contained in a warrant affidavit "is measured by the circumstances of the case, not by the passage of time alone." *United States v. Brown*, 801 F.3d 679, 690 (6th Cir. 2015). "The bare fact that a piece of evidence is months old . . . does not automatically make it stale." *United States v. Burney*, 778 F.3d 536, 540 (6th Cir. 2015). Factors to be considered include:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (citing *United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006)).

---

[2] Defendant maintains that this is corroborated by the fact that the Government executed search warrants at six separate locations on December 9, 2014, all in connection with Hunter's alleged drug trafficking.

9

The Government argues that application of these factors does not necessarily lead to a finding that the information linking Hunter's drug trafficking activity to 35 Lorenz Avenue was stale, because "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). *See also Abboud*, 438 F.3d at 573. In this case, the alleged drug trafficking conspiracy was ongoing, spanning at least two years, and Hunter himself appears to have been firmly entrenched in local drug trafficking activities. *See Burney*, 778 F.3d at 541 (noting that by its very nature, the defendant's drug trafficking operation, which relied on an "established network of distributors and customers, was not the kind of nomadic or sporadic criminal enterprise likely to up-and-vanish under cover of darkness.").

The Sixth Circuit has noted that "[i]n the context of drug crimes, information goes stale very quickly, 'because drugs are usually sold and consumed in a prompt fashion.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (quoting *Frechette*, 583 F.3d at 378). Here, however, there was evidence of ongoing drug trafficking at 35 Lorenz Avenue, and Agent Buzzard sought seizure of more than just the drugs themselves. He also sought seizure of cell phones and pagers, scales and packaging materials, currency, property bought with proceeds of the drug trafficking activity, firearms, photographs and business records. These items would have more enduring use. *See Brown*, 801 F.3d at 690. Finally, it appears that the place to be searched, 35 Lorenz Avenue, had been a secure operational base for drug trafficking activity for an extended period of time.

10

Nevertheless, as Defendant properly points out, the vast majority of information linking Hunter's heroin trafficking activities to 35 Lorenz Avenue was more than eight months old at the time the December 4, 2014, warrant was issued.  Under these circumstances, "some recent information would be necessary to eliminate the possibility that . . . a cessation of illegal activity had not taken place." *Hython*, 443 F.3d at 486.  In that regard, Buzzard's affidavit includes statements about trash pulls conducted in November and December of 2014, and a November 7, 2014, statement of a cooperating defendant.

Defendant notes that trash pulls conducted in the weeks immediately preceding the second warrant request produced no evidence of heroin trafficking. Two baggies pulled from the trash in late November of 2014 tested positive for Tetrahydrocannabinol (THC), but Defendant argues that this evidence is consistent with personal drug use and not drug trafficking.  A field test on a baggie from a trash pull on December 2, 2014 tested positive for the presence of "narcotics," but not necessarily illegal ones.  Lab tests conducted on another baggie found on that date tested positive for THC.  Doc. #44, PageID##116-17.  The Court agrees that, standing alone, it is questionable whether these trash pulls would be sufficient to establish probable cause to believe that evidence of drug trafficking would be found at 35 Lorenz Avenue as of December 4, 2014.

Paragraph 17 of Buzzard's affidavit, however, provides the necessary nexus. It indicates that, on November 7, 2014, a cooperating defendant told law enforcement officers that he and Kevin Hunter were involved in "a large-scale

11

heroin trafficking organization operation in the Dayton, Ohio area." This defendant "identified 35 Lorenz Avenue as the residence Hunter *uses* to store, process, and sell heroin." Govt. Ex. 1 (emphasis added). Defendant notes that the investigation report from that interview with the cooperating defendant does not identify any particular date or dates associated with drug activity at that location. Nevertheless, Buzzard's use of the present tense verb implies that, as of November 7, 2014, Hunter was still using that location for heroin trafficking activity. *See Church*, --F.3d--, 2016 WL 2865736, at *3 (holding that even though the detective did not recite the date on which he was inside defendant's house, he described "events in the present tense," showing that he "was acting on fresh information."). This statement of the cooperating defendant, combined with evidence of a history of drug-trafficking activity at the house, provides the requisite nexus between the place to be searched and the evidence sought.

A magistrate judge's determination of probable cause is to be given "great deference." *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008). The magistrate judge need only have a "substantial basis" for concluding that a search will "uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236. The Court concludes that, given the totality of the circumstances set forth in Buzzard's affidavit, Magistrate Judge Newman had a substantial basis for concluding that there was a "fair probability" that evidence of drug trafficking would be found at 35 Lorenz Avenue on December 4, 2014, when the second warrant was issued.

*Id.* at 238. Suppression of the evidence seized during the resulting search is therefore not justified.

### B.  Good Faith Exception to the Exclusionary Rule

Even if Agent Buzzard's affidavit did not support a finding of probable cause, the evidence seized need not be excluded if the officers who executed the search warrant relied upon it in good faith. *Leon*, 468 U.S. at 905. A finding of good faith reliance requires "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." *Carpenter*, 360 F.3d at 595 (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)). Accordingly, even if an affidavit is insufficient to establish probable cause, it may be sufficient to establish good faith reliance. *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

The Supreme Court has held that the good-faith exception to the exclusionary rule is not available if: (1) the search warrant was obtained using information the affiant knew to be false; (2) the issuing magistrate failed to act in a neutral and detached fashion; (3) the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed that it was valid. *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)).

Defendant impliedly argues that the third exception applies because, based on the lack of information in Buzzard's affidavit linking Hunter to 35 Lorenz Avenue

after March of 2014, no well-trained officer could have reasonably relied on that affidavit as establishing probable cause. The Court has already found, however, that the November 7, 2014, statement of the cooperating defendant, combined with evidence of earlier drug trafficking activity at the house, established the requisite probable cause.

Moreover, Defendant's reliance on *Hython* in support of his argument that the good-faith exception does not apply to warrants based on stale information is misplaced. *Hython* is easily factually distinguishable. It involved a single controlled buy of crack cocaine at a particular location. The affidavit submitted in support of the search warrant request failed to include the date of that controlled buy. The district court nevertheless concluded that the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The Sixth Circuit disagreed. Not only did the affidavit fail to include the date of the drug transaction but, in addition, there was no evidence of any ongoing investigation, any further surveillance, or any other controlled buys. The court noted that:

> Any of these things might serve to establish that the house was the site of an ongoing criminal enterprise, or ground the undated controlled buy within a finite period of investigation. However, without any of these elements, the affidavit is patently insufficient. No well-trained officer could have reasonably relied on a warrant issued on the basis of this affidavit.

443 F.3d at 488-89.

In contrast, for the reasons previously discussed, Agent Buzzard's affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. Accordingly, even if the search warrant were improperly issued, the good-faith exception to the exclusionary rule would apply. Therefore, suppression of the evidence seized during the December 9, 2014, search is not warranted.

### III. Conclusion

For the reasons stated above, the Court OVERRULES Defendant's Motion to Suppress certain evidence and statements, Doc. #36.

Date: June 9, 2016

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE